IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARION LANDERS, <u>et al.</u>, | ) | |
|    Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:04CV1988 (JCH) |
| | ) | |
| MICHAEL O. LEAVITT, | ) | |
|    Defendant. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

PETER D. KEISLER
Assistant Attorney General
KEVIN J. O'CONNOR
United States Attorney
SHEILA M. LIEBER
Deputy Branch Director
CRAIG M. BLACKWELL,
D. Conn. Federal Bar No. phv0032
Senior Trial Counsel
Federal Programs Branch, U.S. Dept. of Justice
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 616-0679
Fax: (202) 616-8470
email: craig.blackwell@usdoj.gov

OF COUNSEL:
ALEX M. AZAR II
General Counsel
ROBERT P. JAYE
Acting Associate General Counsel
ALAN S. DORN
Acting Deputy Associate General
  Counsel for Litigation
PAUL E. SOEFFING
Attorney
U.S. Dept. of Health and Human Services

Date: February 4, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    Legal And Regulatory Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.    Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           1.    Facts Relating To The Named Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . 4

           2.    Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           3.    The Proposed Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.     PLAINTIFFS' PROPOSED CLASS INCLUDES PERSONS OVER WHOM
THE COURT LACKS JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.    Judicial Review Under The Medicare Statute . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.    The Court Lacks Jurisdiction Over Members Of
The Proposed Class Who Have Not Exhausted
Administrative Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.    PLAINTIFFS HAVE NOT SATISFIED RULE 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     A.    Class Action Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     B.    The Named Plaintiffs Have Not Established
Commonality Or Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     C.    The Named Plaintiffs Are Not Adequate Class
Representatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

     D.    The Named Plaintiffs Have Not Met The Requirements of Rule
23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.   THERE IS NO BASIS ON WHICH TO CERTIFY A NATIONWIDE
       CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## CASES

Amchem Prods., Inc. v. Windsor,
521 U.S. 591 (1997) ................................................................ 24

Ashwander v. TVA,
297 U.S. 288 (1936) ................................................................ 16

Califano v. Yamasaki,
442 U.S. 682 (1979) ................................................ 13, 14, 26, 27

Caridad v. Metropolitan-North Commuter R.R.,
191 F.3d 283 (2d Cir. 1999),
cert. denied, 529 U.S. 1107 (2000) ................................... 19, 25

In re Drexel Burnham Lambert Group, Inc.,
960 F.2d 285 (2d Cir. 1992) ..................................................... 24

General Tel, Co. v. Falcon,
457 U.S. 147 (1982) ................................ 18, 19, 20, 23, 24, 25

Geraghty v. United States Parole Comm'n,
719 F.2d 1199 (3d Cir. 1983),
cert. denied, 465 U.S. 1103 (1984) ......................................... 26

Heckler v. Ringer,
466 U.S. 602 (1984) ....................................................... 11,14, 17

Jenkel v. Shalala,
845 F. Supp. 69 (D. Conn. 1994) ....................... 6, 7, 16, 21, 23

Lewin v. Shalala,
887 F. Supp. 74 (S.D.N.Y. 1995) ............................................. 3

Marisol A. v. Giuliani,
126 F.3d 372 (2d Cir. 1997) ............................. 18, 19, 20, 23

Mathews v. Eldridge,
424 U.S. 319 (1976) ................................................................ 15

Mercer v. Birchman,
700 F.2d 828 (2d Cir. 1983) ............................................. 26, 27

Pavano v. Shalala,
95 F.3d 147 (2d Cir. 1996) ..................................... 14, 15, 17, 18

Petrolito v. Arrow Fin. Servs., LLC,
221 F.R.D. 303 (D. Conn. 2004) ........................... 4, 19, 21, 24

Phelps v. Harris,
    86 F.R.D. 506 (D. Conn. 1980) ................................................................. 27

Reese v. Arrow Fin. Servs., LLC,
    202 F.R.D. 83 (D. Conn. 2001) ................................................. 20, 21, 22

Sampson v. Murray,
    415 U.S. 61 (1974) .................................................................................. 17

Shalala v. Illinois Council on Long Term Health Care,
    528 U.S. 1 (2000) ....................................... 9, 11, 12, 14, 15, 16

United States v. Mendoza,
    464 U.S. 154 (1984) ................................................................................ 26

## STATUTORY AND REGULATORY PROVISIONS

Medicare Act, 42 U.S.C. §§ 1395-1395hhh

    42 U.S.C. § 405(b) ................................................................................. 11

    42 U.S.C. § 405(g) ................................................................. 11, 13, 14

    42 U.S.C. § 405(h) ................................................................. 11, 12

    42 U.S.C. § 1395d(a) ............................................................................. 2

    42 U.S.C. § 1395d(b) ............................................................................. 2

    42 U.S.C. § 1395d(f) ............................................................................. 3

    42 U.S.C. § 1395k(a) ............................................................................. 2

    42 U.S.C. § 1395x(h) ............................................................................ 2

    42 U.S.C. § 1395x(i) .......................................................................... 3, 9

    42 U.S.C. § 1395ii ................................................................................ 12

20 C.F.R.

    20 C.F.R. § 422.203(c) ......................................................................... 16

42 C.F.R.

    42 C.F.R. § 405.718 ............................................................................. 15

    42 C.F.R. § 409.20(c)(4) ........................................................................ 3

42 C.F.R. § 409.30(a)(1) ................................................................. 4, 9

42 C.F.R. § 409.30(b) ..................................................................... 3

42 C.F.R. § 409.31 ......................................................................... 3

## MISCELLANEOUS

S. Rep. No. 404 (1965), reprinted in,
    1965 ISKCON 1943, 1971 ....................................................... 3

Fed. R. Civ. P. 23

    Fed. R. Civ. P. 23(a) ............................................................. 18, 19

    Fed. R. Civ. P. 23(b) ............................................................. 18

    Fed. R. Civ. P. 23(b)(2) ...................................................... 10, 19, 25

Fed. R. Civ. P. 25

    Fed. R. Civ. P. 25(d)(1) ............................................................. 1

Medicare Benefit Policy Manual

    Chapter 1, § 10 ..................................................................... 4

    Chapter 4, § 290.1 ................................................................. 22

    Chapter 6, § 20.1 ................................................................... 4

    Chapter 8, § 20.1 ................................................................... 4

## PRELIMINARY STATEMENT

The named plaintiffs, two Connecticut residents, seek to represent a nationwide class of Medicare beneficiaries challenging defendant's allegedly unlawful policy of denying Medicare coverage for post-hospital care in a skilled nursing facility ("SNF") when a portion of the statutorily-required 3-day "inpatient" qualifying hospital stay is attributable to time spent in an admittedly "outpatient" status, whether in the emergency room or on observation.[1]  Plaintiffs seek to include within their class persons, like the named plaintiff Mr. Dixon, who have not exhausted administrative remedies before the agency with respect to their claim for SNF coverage. Currently before the Court is plaintiffs' motion for nationwide class certification.

Plaintiffs' motion should be denied.  As an initial matter, the Court lacks jurisdiction over the claims of Mr. Dixon and similarly situated persons who have not exhausted their remedies before the agency.  Under the Medicare statute, 42 U.S.C. §§ 1395-1395hhh ("Act"), exhaustion of administrative remedies is a jurisdictional prerequisite to obtaining review of reimbursement decisions in federal court, and is required even when administrative remedies may not, standing alone, afford a means of redress for every claim.  There is no reason for excusing this mandatory requirement in this case.

Even excluding from the class persons still in the administrative process, plaintiffs' motion should be denied because plaintiffs have not established the required elements for certification under Rule 23 of the Federal Rules of Civil Procedure.  The administrative proceedings related to Ms. Landers, the only named plaintiff who has exhausted administrative remedies, make clear that the issues she seeks to litigate are inherently fact-based, and contain no

---

[1]Michael O. Leavitt is substituted for defendant Tommy Thompson as Secretary of the Department of Health and Human Services ("Secretary") pursuant to Federal Rule of Civil Procedure 25(d)(1).

questions of fact or law common to the class claims.  Ms. Landers' litigation interests also may be opposed to the litigation interests of potential class members whose claims rest on different facts.  For these and other reasons discussed below, plaintiffs' claims and the class claims are not so inter-related that the interests of the class members will be fairly and adequately protected in their absence.

Even if certification were appropriate, there is no basis on which to certify a nationwide class.  Although nationwide class actions are not impermissible *per se*, they risk intruding on the jurisdiction of other, coordinate courts, deprive the judicial system of the benefits of having complex issues examined by different courts in different factual contexts, and deny the government its ability to litigate a legal issue in more than one forum.  Ms. Landers' single, fact-based claim plainly does not provide an appropriate vehicle for nationwide certification, and plaintiffs' motion should be denied for this reason as well.

## BACKGROUND

### A.    Legal And Regulatory Background

The Medicare Program is the federal health insurance program for people 65 and older and certain disabled people.  Medicare Part A provides coverage for inpatient hospital services and related post-hospital services.  See 42 U.S.C. §§ 1395d(a), (b).  Medicare Part B provides voluntary supplementary insurance coverage for physicians' services, outpatient hospital services, and other medical and health services.  See 42 U.S.C. § 1395k(a).

Part A includes a benefit for "post-hospital extended care services."  See 42 U.S.C. § 1395d(a)(2).  The Act defines "extended care services" as certain services "furnished to an inpatient of a skilled nursing facility" (SNF).  See id. §§ 1395x(h)(1)-(7); see also 42 C.F.R.

§ 409.31 (describing requirement that SNF care be needed at a "skilled" level).  To qualify for coverage, "extended care services" must also be "post-hospital."  To meet the "post-hospital" requirement, the Act requires that SNF services be "furnished an individual after transfer from a hospital in which he was an inpatient for not less than 3 consecutive days before his discharge from the hospital in connection with such transfer."  Id. § 1395x(i).  This requirement — the requirement at issue in this litigation — is referred to below as the "3-day-inpatient requirement" or the "qualifying hospital stay."[2]  See Lewin v. Shalala, 887 F.Supp. 74, 76 (S.D.N.Y. 1995) (3-day-inpatient requirement "a prerequisite for Medicare coverage").  Covered SNF care also must commence within a specified period of time (generally 30 days) following discharge from the qualifying hospital stay.  See 42 U.S.C. § 1395x(i); 42 C.F.R. § 409.30(b).

With respect to the 3-day-inpatient requirement, HHS regulations provide, in the subpart related to "requirements for coverage of posthospital SNF care":

(a) *Pre-admission requirements*.  The beneficiary must —

(1) Have been hospitalized in a participating or qualified hospital or participating CAH [critical access hospital], for medically necessary inpatient hospital or inpatient CAH care, for at least 3 consecutive calendar days, not counting the date of discharge[.]

---

[2]Congress enacted the 3-day-inpatient requirement in 1965 as part of the original Medicare statute to target beneficiaries who require a short-term, fairly intensive stay in a SNF as a continuation of an acute-care stay in a hospital.  See S. Rep. No. 404 (1965), reprinted in, 1965 U.S.C.C.A.N. 1943, 1971. The Medicare Act more recently was amended to authorize the Secretary to provide for coverage of extended care services without regard to the 3-day-inpatient requirement, but only "at such time and for so long as the Secretary determines, and under such terms and conditions . . . as the Secretary finds appropriate, that the inclusion of such services" will neither increase overall program costs nor alter the "acute care nature of the benefit."  42 U.S.C. § 1395d(f).  The Secretary thus far has been unable to exercise this authority consistent with Congress' requirements.  Beneficiaries enrolled in a plan offered by a Medicare+Choice organization, however, may be covered for post-hospital SNF care "that does not follow a hospital stay."  See 42 C.F.R. § 409.20(c)(4).

42 C.F.R. § 409.30(a)(1).  Similarly, in a section entitled "Three-Day Prior Hospitalization," the Medicare Benefit Policy Manual ("Medicare Manual" or "MBPM") provides:  "[i]n determining whether the requirement has been met, the day of admission, but not the day of discharge, is counted as a hospital inpatient day"; and "[t]o be covered, the extended care services must have been for the treatment of a condition for which the beneficiary was receiving inpatient hospital services[.]"  MBPM, ch. 8, § 20.1.

The Medicare Manual defines a hospital "inpatient" as "a person who has been admitted to a hospital for bed occupancy for purposes of receiving inpatient hospital services."  MBPM, ch. 1, § 10.[3]  A hospital "outpatient," by contrast, is defined as someone who "has not been admitted by the hospital as an inpatient but is registered on the hospital records as an outpatient and receives services (rather than supplies alone) from the hospital."  See id., ch. 6, § 20.1.  Outpatient services include emergency room services and observation services.

**B.**    **Factual Background**

1.    Facts Relating To The Named Plaintiffs[4]

Two named plaintiffs are seeking to represent the proposed class, Marion Landers and Marion Dixon.  See Complaint ("Compl.") ¶ 3.

a.  Marion Landers.  Ms. Landers, a Connecticut resident, see Compl. ¶ 5, alleges that she was taken to the emergency room on April 20, 2001 "because of complaints of back

---

[3]The physician or other practitioner responsible for a patient's care at the hospital is responsible for deciding whether the patient should be admitted as an inpatient.  See MBPM, ch. 1, § 10.  The decision to admit "is a complex medical judgment," depending on multiple factors. See id.

[4]Defendant accepts the facts alleged in the complaint as true for purposes of this brief. See Petrolito v. Arrow Fin. Servs., LLC, 221 F.R.D. 303, 307 (D. Conn. 2004)

pain, inability to stand, and pain in her left leg and hip." Id. ¶ 23.  While in the emergency room,

diagnostic tests were performed and she was treated with pain medication.  See id. ¶¶ 25-26.  The

next day, April 21, Ms. Landers was in "observation status in the emergency room," and a

physical therapy evaluation was ordered.  Id.  ¶ 27.  Later that same day, Ms. Landers was

admitted to the hospital as an inpatient.  See id. ¶ 28.  On April 23, Ms. Landers was discharged

from the hospital and transferred to a skilled nursing facility, Avery Heights.  See id. ¶ 28.  Prior

to her discharge from the hospital, Ms. Landers thus spent one day in the emergency room, and

two days as an inpatient.  She alleges that "[t]he care that [she] received after being formally

admitted as an inpatient was essentially the same as the care that she had received while in the

emergency room."  Id. ¶ 29.

After an initial determination denying coverage for her stay in Avery Heights from April

23, 2001 to June 4, 2001, Ms. Landers began exhausting required administrative remedies at the

agency level.  See Compl. ¶ 32.  First, represented by the same counsel representing her here, Ms.

Landers filed a request for reconsideration.  That request was denied because "the fiscal

intermediary" — a private entity that acts as HHS's agent in the initial stages of Medicare

coverage determinations — "determined that she did not have a three-day hospital stay prior to

her transfer to the [SNF]."  Id.  Ms. Landers then filed a request for review by an administrative

law judge ("ALJ").  Id. at 33.

At the ALJ level, Ms. Landers raised two arguments.[5]  *First*, acknowledging that one of

_____

[5]Defendant will be filing the certified administrative record with respect to Ms. Landers'
administrative proceedings when defendant files a response to plaintiffs' complaint.  Defendant
attaches to this memorandum two documents that are part of the Landers' administrative record:
(1) Ms. Landers' initial brief filed before the ALJ (Exhibit ("Ex.") 1 hereto) and (2) Ms. Landers'
brief filed with the Medicare Appeals Council (Ex. 2 hereto).  For purposes of this filing,

her three hospital days was spent in the emergency room, and not as an inpatient, Ms. Landers

argued (see Ex. 1 at 2) that she should be deemed to have met the 3-day-inpatient requirement

under the reasoning of Magistrate Judge Smith's decision in Jenkel v. Shalala.  See 845 F.Supp.

69 (D. Conn. 1994) (decision of Judge Nevas adopting, without objection, the Magistrate's

recommended ruling).  We briefly discuss the decision in Jenkel and Ms. Landers' administrative

proceedings because of their relevance to some of the issues raised by plaintiffs' class

certification motion.

        The plaintiff in Jenkel, a Medicare beneficiary, was delivered by ambulance to an

emergency room late at night.  See 845 F.Supp. at 70.  Shortly after midnight, plaintiff was

admitted to the hospital as an inpatient; see id. & n.1; two days later, she was discharged to a

SNF.  See id. at 70.  Magistrate Judge Smith reversed an ALJ's determination that plaintiff had

not met the 3-day-inpatient requirement.  See id. at 71.  Finding that there had been a "continuity

of the plaintiff's treatment" during her time in the emergency room and as an inpatient, the

Magistrate deemed plaintiff "de facto" admitted as of "the time of her arrival in the emergency

room."  See id. at 71; see also id. ("[n]either her condition nor her course of treatment differed at

the time of her 'formal' admission to the hospital from the time of her admission to the

emergency room").  Relying on Jenkel, Ms. Landers argued to the ALJ that "[i]t is a continuous

course of diagnosis and treatment at the requisite hospital level of care, not the formal point of

admission to a specific ward or unit that determines whether a patient had a three day prior

---

defendant has redacted references to Ms. Landers' medical history that are not relevant to the
matters discussed herein, as well as personal data identifiers required to be redacted under court
rules.  As explained below, Mr. Dixon is still exhausting administrative remedies.  Defendant,
accordingly, cannot compile the administrative record with respect to Mr. Dixon's administrative
claim.

hospital stay." Ex. 1 at 2. Noting that, "[i]n the instant case, the facts are identical to those in Jenkel," Ms. Landers argued that she met "the standard articulated in Jenkel." Id.

*Second*, Ms. Landers argued that the services she received at Avery Heights were at the required level of daily skilled care. See Ex. 1 at 3-4 ("it must further be determined if the claimant needed and received daily skilled care during the subsequent placement in [the SNF]").

In a decision dated September 19, 2003, the ALJ denied Ms. Landers' coverage claim for failure to meet the 3-day-inpatient requirement. First, the ALJ noted that an "inpatient" is a person who is formally admitted to a hospital. See Compl., Ex. A, at 5. Then, the ALJ specifically addressed Ms. Landers' argument based on Jenkel. Noting that Ms. Landers had argued that her time in the emergency room "should be counted [under] Jenkel," the ALJ found that a "review of the medical record [in] Ms. Landers' claim showed that the treatment in the emergency room and inpatient hospital treatment were different, so the Jenkel rational[e] is not applicable." Compl., Ex. A, at 5. The ALJ did not reach Ms. Landers' argument with respect to whether she received the required level of skilled care. See id. at 4-6.

Ms. Landers sought review of the ALJ's decision with the Medicare Appeals Council ("MAC"). See Compl. ¶ 34. In her brief to the MAC, Ms. Landers again argued the same two points she argued to the ALJ. With respect to the 3-day-inpatient requirement, Ms. Landers argued the ALJ had "erred" by not "correctly applying" Jenkel. Ex. 2 at 2 (argument heading) (initial capitals deleted). Specifically, Ms. Landers asserted:

> The ALJ determined that the Jenkel standard did not apply in Ms. Landers['] case because "a review of the medical record tin [sic] Ms. Lander's claim showed that the treatment in the emergency room and inpatient hospital treatment were different, so the Jenkel rational is not appropriate." (In The Case of Marion Landers, September 19, 2003, p.2) Contrary to the ALJ's assertion, however, Ms.

> Landers's treatment in the inpatient hospital setting was clearly a continuation of the treatment she received in the emergency room. She was receiving Morphine via IV for back pain in the emergency room and once she was admitted into the hospital she continued with pain management for her back which included IV Morphine. The rest of the treatment, as stated above, was also to treat the fracture of her spine, which included IV steroids and a physical therapy evaluation. The claimant satisfied the standard articulated in Jenkel and, accordingly, should be found to have had a three day hospital stay immediately prior to her admission to Avery Heights.

Ex. 2 at 2. Finding no basis under the governing regulations for granting Ms. Landers' request for review, the MAC denied Ms. Landers' request by decision dated September 27, 2004. See Compl., Ex. B, at 1.

b. Marion Dixon. Mr. Dixon, also a Connecticut resident, see Compl. ¶ 6, alleges that he was taken to the emergency room on December 21, 2003 "after a sudden onset of nausea, vomiting, and lightheadedness, including dizziness when he attempted to sit up that was so severe that he could not walk even with assistance." Id. ¶ 36. On December 22, Mr. Dixon was "transferred to a bed in the hospital on 'observation status.'" Id. ¶ 39. On December 23, "his status was changed to 'full admission,'" id. ¶ 40, and on December 24, he was ordered transferred to a SNF (Carolton Convalescent Home), see id. ¶ 41, where he remained until he was discharged on January 27, 2004. See id. ¶ 44. Prior to his discharge from the hospital, Mr. Dixon thus spent one day in the emergency room, one day in observation, and one day as an inpatient. He alleges that "[t]he care that [he] received after being formally admitted as an inpatient was essentially the same as the care that he had received while in the emergency room and on observation status." Id. ¶ 42.

Mr. Dixon is still in the process of exhausting administrative remedies.[6]  Carolton Convalescent submitted two claims to the Medicare fiscal intermediary for Mr. Dixon's SNF coverage.  See Compl. ¶ 45.  The first claim, for the time period from December 24, 2003 through December 31, 2003, was denied upon initial determination and upon reconsideration. See id. ¶ 46.  Mr. Dixon filed a request for ALJ review on November 22, 2004 — the day before this complaint was filed; that request is still pending.  See id.  The second claim, for the period from January 1, 2004 through January 27, 2004, was denied at the initial determination stage on October 22, 2004.  Plaintiffs' class certification brief ("Pl. Br.") notes that, on December 20, 2004, a month after this complaint was filed, Mr. Dixon's second claim also was denied upon reconsideration.  See Pl. Br. at 5.  On December 30, 2004, Mr. Dixon filed a request for ALJ review.  See id.

       2.    Plaintiffs' Claims

Plaintiffs' complaint raises two claims.  *First*, plaintiffs contend defendant violated the Medicare statute and regulations by "refusing to recognize that all of plaintiffs' stays in the hospital were as inpatients for purposes of their qualifying hospital stay to determine coverage for SNF care."  Compl. ¶ 53.  Plaintiffs do not challenge, however, either the provision of the Medicare Act, see 42 U.S.C. § 1395x(i), or the implementing regulation, see 42 C.F.R. § 409.30(a)(1), requiring a 3-day-inpatient stay.  See Compl. ¶ 20 (noting that "[a] necessary condition of [SNF] coverage is that the beneficiary have been an inpatient in a hospital for at least three consecutive calendar days prior to her discharge from the hospital").  *Second*,

---

[6]As explained infra Part I.A, exhaustion of administrative remedies is a prerequisite to seeking judicial review of claims arising under the Medicare statute.  Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 13 (2000).

plaintiffs contend the Secretary violated the Equal Protection component of the Fifth

Amendment's Due Process Clause by creating two classifications of Medicare beneficiaries —

those "who are formally admitted originally and those who spend time first in the emergency

room and/or on observation status before being formally admitted" (id. ¶ 54) — who "are

identical in all relevant respects but are treated differently for purposes of the qualifying hospital

stay requirement."  Id. ¶ 56.

   For relief, plaintiffs seek an injunction and a writ of mandamus "prohibiting the defendant

. . . from not counting time spent in an emergency room and/or in observation status towards the

three-day qualifying hospital stay for purposes of determining coverage for subsequent SNF care

for all class members," see Compl. ¶ 5.a, and a declaration that the enjoined conduct violates the

Medicare statute and regulations and the Equal Protection component of the Fifth Amendment's

Due Process Clause.  See id. ¶ 3.  Plaintiffs contend this relief should extend "to all future claims

for SNF coverage and to all claims for SNF coverage presently pending at any level of the

administrative appeals process, from initial determination through and including the [MAC],

including any cases that have been decided at a given level of the administrative process."  Id.

¶ 5.b.  Plaintiffs also specifically seek injunctive relief on behalf of the named plaintiffs, see id.

¶ 4.a., and a remand of the named plaintiffs' claims to the administrative level to "re-evaluate"

their coverage for SNF care in light of the relief ordered.  See id. ¶¶ 4.b, 4.c.

   3.  The Proposed Class

   In their Complaint and certification papers, plaintiffs seek to represent a nationwide class

under Fed. R. Civ. P. 23(b)(2) defined as:

   All Medicare beneficiaries who (1) have been or will be in a hospital for at least

three consecutive days prior to discharge from the hospital; (2) were or will be in the emergency room and/or in observation status for some portion of those days in the hospital; (3) were or will be admitted formally as an inpatient for at least one of those days; (4) after a claim has been or will be filed on their behalf, have been or will be denied Medicare coverage for [SNF] care because of spending less than three days as a formally admitted inpatient; and (5) have or will have a claim pending for the Medicare coverage so denied at some level of the administrative process, or have filed or could timely file for review at either the next level of the administrative process or in federal district court, within sixty (60) days prior to the date of the filing of this complaint.

Compl. ¶ 8; Pl. Br. at 1-2.  Plaintiffs contend that the first three numbered parts of this class definition "provide the substantive basis for membership in the class," and that the last two numbered parts "define the class to include only those who have presented their claim to the Secretary for coverage and whose claim was 'alive' in the administrative process at the time of the filing of the complaint."  Pl. Br. at 2 n.2.

## ARGUMENT

## I.    PLAINTIFFS' PROPOSED CLASS INCLUDES PERSONS OVER WHOM THE COURT LACKS JURISDICTION

### A.    Judicial Review Under The Medicare Statute

The Medicare statute generally conditions federal jurisdiction over claims "arising under" the Act on presentment of a claim to the Secretary and exhaustion of statutorily-prescribed administrative remedies.  See 42 U.S.C. §§ 405(g), 405(h), 1395ii; Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 12-14 (2000); Heckler v. Ringer, 466 U.S. 602, 614-15 (1984) (Medicare review scheme applies to "all 'claim[s] arising under 'the Medicare Act") (alteration in original).[7]  Requiring exhaustion under the statutory scheme "assures the agency greater

---

[7]The exhaustion requirement arises through several interlocking provisions of the Social Security Act.  Briefly, 42 U.S.C. § 405(b) establishes administrative hearing rights; 42 U.S.C. § 405(g) provides that "final decision[s]" of the Secretary "made after a hearing" are subject to

opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case." Illinois Council, 529 U.S. at 13.

Illinois Council is the Supreme Court's most recent statement on exhaustion under the Medicare statute. In broad language, the Court reaffirmed that the Act "demands the 'channeling' of virtually all legal attacks through the agency" before a claimant may seek judicial review of a claim arising under the Act. See 529 U.S. at 13. The Court recognized that these administrative remedies may not, standing alone, afford a means of redress for every claim. The Court noted, in particular, that the agency may not provide an administrative hearing for constitutional claims, or for claims that challenge the validity of a statute or agency regulation. See id. at 23. The Court made clear, however, that these limitations on the remedial powers of the agency's hearing officers would not ordinarily excuse a claimant from invoking the agency's administrative processes before seeking judicial review. See id. ("[t]he fact that the agency might not provide a hearing for [a] *particular contention*, or may lack the power to provide one . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency") (emphasis in original) (internal citation omitted).

---

judicial review; and 42 U.S.C. § 405(h) channels virtually all claims through this administrative process, such that exhaustion of administrative remedies is the exclusive means of obtaining judicial review of the Secretary's final decision. These provisions apply to claims arising under the Medicare statute by virtue of 42 U.S.C. § 1395ii.

**B.**      **The Court Lacks Jurisdiction Over Members Of The Proposed**
          **Class Who Have Not Exhausted Administrative Remedies**

The last two numbered parts of plaintiffs' proposed class definition include all persons who:  "(4) after a claim has been or will be filed on their behalf, have been or will be denied Medicare coverage for [SNF] care because of spending less than three days as a formally admitted inpatient; and (5) have or will have a claim pending for the Medicare coverage so denied at some level of the administrative process, or have filed or could timely file for review at either the next level of the administrative process or in federal district court, within sixty (60) days prior to the date of the filing of this complaint."  Compl. ¶ 8; Pl. Br. at 1-2.  This definition improperly includes persons over whom the Court lacks jurisdiction.

As an initial matter, these parts of plaintiffs' class definition could be read to include within the class persons who:  (a) have not presented claims for denials of SNF benefits to the Secretary (i.e., because they chose not to or because their claims do not yet exist); or (b) may have presented such claims to the Secretary, but whose claims are no longer alive (i.e., because they failed to seek, or cannot now seek, the next level of administrative or judicial review in a timely fashion).  Plaintiffs' certification brief makes clear, however, that their proposed class is *not* intended to include such persons (nor could it lawfully do so).  That is, plaintiffs' brief clarifies that the proposed class is meant to include "*only* those who have presented their claim to the Secretary for coverage *and* whose claim was 'alive' in the administrative process at the time of the filing of the complaint."  Pl. Br. at 2 n.1 (emphasis added); see also Califano v. Yamasaki, 442 U.S. 682, 701 (1979) (class actions maintainable under 42 U.S.C. § 405(g) "so long as the membership of the class is limited to those who meet the requirements of [that section]"); id. at

704 (class too broad to the extent it included persons who failed to obtain a "final decision" from the Secretary).

Even so modified, however, plaintiffs' proposed class is still too broad to the extent it purports to include persons with "live" claims "in the administrative process at the time of the filing of the complaint." Pl. Br. at 2 n.1. As explained above, exhaustion is a jurisdictional prerequisite to maintaining a suit under the Medicare Act. See Illinois Council, 529 U.S. at 13; Ringer, 466 U.S. at 614-17. The Court lacks jurisdiction over the proposed class, therefore, to the extent it purports to include persons — like the named plaintiff Mr. Dixon — who still are exhausting administrative remedies.[8] See Califano, 442 U.S. at 701, 704.

Plaintiffs suggest that exhaustion is not required for Mr. Dixon — and, presumably, for similarly situated proposed class members — because of "the inevitability of an adverse decision." Pl. Br. at 5. As noted above, the alleged "futility" of Medicare's administrative remedies ordinarily is not sufficient to waive exhaustion requirements. See Illinois Council, 529 U.S. at 23; Pavano v. Shalala, 95 F.3d 147, 150 (2d Cir. 1996) ("'[e]xhaustion is the rule, waiver the exception'") (internal citation omitted) (alteration in original). The Supreme Court has recognized, however, that, once a claim is presented to the Secretary, an administrative decision may be deemed "final" for purposes of 42 U.S.C. § 405(g) and subject to immediate review "in special cases" (Ringer, 466 U.S. at 618), i.e., in cases where: (1) exhaustion would be futile; (2) the claim is collateral to a substantive claim of entitlement to benefits; and (3) the claimant

---

[8]Defendant will move to dismiss, or seek judgment on, Mr. Dixon's claims because of this jurisdictional defect.

would suffer irreparable injury absent immediate judicial review.[9]  See, e.g., Mathews v. Eldridge, 424 U.S. 319, 330-32 & n.11 (1976); Illinois Council, 529 U.S. at 24 (citing Eldridge); Pavano, 95 F.3d at 151-52 (noting, as well, that no one factor is critical and that application of the factors should be "'guided by the policies underlying the exhaustion requirement'") (internal citation omitted).

Plaintiffs cannot satisfy any of these requirements for waiver of exhaustion.  *First*, exhaustion would not be futile.  Plaintiffs do not challenge the constitutionality or legality of a statute or regulation, or raise any other claim that an ALJ would lack power to decide.  See Pavano, 95 F.3d at 150; but see Illinois Council, 529 U.S. at 23 (noting that exhaustion required even where "the agency might not provide a hearing for [a] particular contention, or may lack the power to provide one") (emphasis deleted).  Plaintiffs acknowledge (as they must) that the Medicare statute and the implementing agency regulations contain a 3-day-inpatient requirement for SNF coverage.  See Compl. ¶¶ 16, 20.  Their argument is that, *in interpreting* the statute and implementing regulations, a person, once admitted as a hospital inpatient, should be deemed an "inpatient" for SNF coverage purposes as of the time he or she entered the emergency room or was placed on observational status (at least so long as the person receives a "continuity of . . .

---

[9]Defendant's regulations also afford beneficiaries a means of obtaining expedited judicial review after presentment of claims that turn solely on legal questions that cannot be addressed by the agency's hearing officers.  If a beneficiary believes that there are no disputed factual issues and that his or her challenge to the payment determination turns solely on questions such as the validity of a statute or agency regulation (matters the ALJ cannot address), it may request certification of the matter for judicial review in lieu of an ALJ hearing.  See 42 C.F.R. § 405.718. As far as defendant is aware, Mr. Dixon has not sought certification of his claim for expedited appeal.  Nor would such certification be appropriate.  As noted above, the ALJ has the authority to address Mr. Dixon's claim; moreover, that claim, as presented by Mr. Dixon (see Compl. ¶ 42), turns on factual as well as legal issues.

treatment" under <u>Jenkel</u>).

The Secretary disagrees with plaintiffs' interpretive argument.  But, whatever merit there may be to plaintiffs' contention, the question is within the authority of an ALJ to decide.  <u>See</u> 20 C.F.R. § 422.203(c) (ALJ hearing decisions "must be based on the evidence of record, under applicable provisions of the law and regulations and appropriate precedents").  Indeed, with respect to Ms. Landers' claim, the ALJ specifically considered her argument that time spent in the emergency room should count toward the qualifying hospital stay under <u>Jenkel</u>, but found "the <u>Jenkel</u> rational[e] . . . not applicable" on the facts.  Compl. Ex.  A, at 5.  Before the MAC, Ms. Landers attached a decision where the same ALJ, in a different case, counted a claimant's time in the emergency room toward fulfilling the 3-day-inpatient requirement.  <u>See</u> Ex. 2, at 3 n.1.  If exhaustion may be required where "the agency might not provide a hearing for [a] particular contention, or may lack the power to provide one," <u>Illinois Council</u>, 529 U.S. at 23 (emphasis deleted), then it plainly should be required where the agency *does* provide a hearing for the claimant's argument.[10]

Indeed, Mr. Dixon, in apparent reliance on <u>Jenkel</u>, specifically alleges in the Complaint that "[t]he care that [he] received after being formally admitted as an inpatient was essentially the same as the care that he had received while in the emergency room and on observation status."

---

[10]In their Complaint, plaintiffs also contend it would be unconstitutional not to count time in the emergency room or on observation status towards the 3-day-inpatient requirement.  <u>See</u> Compl. ¶ 54.  Although this is a constitutional claim, the constitutional question would not arise if a claimant prevailed under "the <u>Jenkel</u> rational[e]."  <u>See</u> Compl. Ex.  A, at 5; <u>see also</u> <u>Ashwander v. TVA</u>, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) (noting general rule that courts should avoid unnecessary adjudication of constitutional issues).  Moreover, plaintiffs' constitutional claim — unlike a constitutional challenge to a statute or regulation — is a claim the agency would have power to remedy.

Id. ¶ 42.  It is at least conceivable that Mr. Dixon could prevail in front of the ALJ on this point.

It also is conceivable that he could lose in front of the ALJ on a different issue (e.g., on whether

the services he received at Carolton Convalescent Home were at the requisite level of care) or on

multiple issues.  Cf. Ringer 466 U.S. at 619 n.12 (noting that "[s]everal respondents in this case

pursued their administrative remedies during the pendency of this litigation . . . and the claims of

[two] respondents . . . were denied on grounds not even related to the [agency actions] which

they now seek to challenge in federal court").  Win or lose, though, exhaustion would not be

futile.

Second, the issue plaintiffs raise is not collateral to a substantive claim for benefits.  For

example, plaintiffs do not challenge agency procedures or processes related to the handling of

their claims; they challenge the Secretary's determination that they are not entitled to benefits.

Pavano, 95 F.3d at 150 (claim not collateral where "[t]he gravamen of [plaintiffs'] complaint is

that the Government wrongly denied them benefits").  It is true that plaintiffs seek declaratory

and injunctive relief, and not a direct award of benefits, but the relief, if granted, would establish

for plaintiffs one of the statutory prerequisites for SNF coverage.  See, e.g., Compl. p. 13, ¶ 4.b

(requesting, as relief, that the Court "[o]rder a remand of the case of plaintiff Landers to re-

evaluate coverage for her SNF care in light of the [requested] declaratory and injunctive relief").

Indeed, plaintiffs state that Mr. Dixon is seeking to evade the administrative process precisely

because "he has already had to pay the cost of SNF care."  See Pl. Br. at 5.  At a minimum,

therefore, plaintiffs' claim is "inextricably intertwined" with a substantive claim for benefits.

Ringer, 466 U.S. at 614.

Third, plaintiffs will not be irreparably harmed if exhaustion is not waived.  Their claims

-17-

essentially are claims for benefits, and a demand for money does not implicate any plausible claim of irreparable injury.  Cf. Sampson v. Murray, 415 U.S. 61, 90-91 (1974) (recoverable monetary loss does not usually constitute irreparable injury).  Moreover, notwithstanding plaintiffs' suggestion to the contrary (see Pl. Br. at 5), the inconvenience and expense associated with administrative proceedings do not excuse a failure to exhaust.  See Pavano, 95 F.3d at 151 (parenthetical summarizing Abbey v. Sullivan, 978 F.2d 37, 46 (2d Cir. 1992)).  For all of these reasons, then, the Court should deny plaintiffs' motion to the extent plaintiffs seek to certify a class composed of persons who have not exhausted administrative remedies.

## II.     PLAINTIFFS HAVE NOT SATISFIED RULE 23

### A.     Class Action Requirements

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  General Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982) (internal citation omitted).  Under Fed. R. Civ. P. 23(a), a party seeking class certification must satisfy four threshold criteria:  (1) numerosity (a class "so numerous that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "typical of the claims or defenses of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

In addition to satisfying Rule 23(a), the party seeking certification must establish that the proposed class action is appropriate under at least one of the requirements of Rule 23(b).  See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  Plaintiffs seek to certify a class under Rule 23(b)(2), which authorizes certification where "the party opposing the class has acted or

-18-

refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

The party seeking certification "bears the burden of demonstrating" that each Rule 23 requirement is met.  Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999), cert. denied, 529 U.S. 1107 (2000).  In meeting this burden, the plaintiff must "provide sufficient information on which the court can make a determination."  Petrolito v. Arrow Fin. Servs., LLC, 221 F.R.D. 303, 307 (D. Conn. 2004).  Although Rule 23 is given a "'liberal rather than restrictive construction,'"  Marisol A., 126 F.3d at 377 (internal citation omitted), before a class may be certified, the district court "must be persuaded, 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  Caridad, 191 F.3d at 291 (quoting Falcon, 457 U.S. at 161).  Careful attention to Rule 23 requirements is "'indispensable.'"  Falcon, 457 U.S. at 157 (internal citation omitted).  As we now show, plaintiffs cannot establish that a class action is appropriate under these standards.

**B.    The Named Plaintiffs Have Not Established Commonality Or Typicality**

The commonality and typicality requirements of Rule 23(a) "'tend to merge' because '[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'"  Caridad, 191 F.3d at 291 (alteration in original) (quoting Falcon, 457 U.S. at 157 n. 13).  To satisfy commonality,  plaintiffs must make a "specific presentation" identifying a question of law or fact common to their claims and those of the class members they

seek to represent.  Falcon, 457 U.S. at 158.  To satisfy typicality, plaintiffs must establish that "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  Marisol A., 126 F.3d at 372 (internal citation omitted).  Plaintiffs' claims fail these requirements for three basic reasons.

First, the course of Ms. Landers' administrative proceedings make clear that this case will lack common questions of law or fact.  See Falcon, 457 U.S. at 160 ("sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"); Reese v. Arrow Fin. Servs., LLC, 202 F.R.D. 83, 92 (D. Conn. 2001) (assessing appropriateness of class certification "'may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of action'") (internal citation omitted).  During her administrative proceedings, Ms. Landers, represented by the same counsel, argued that her time in the emergency room should count toward the 3-day-inpatient requirement under the decision in Jenkel because she had "a continuous course of diagnosis and treatment at the requisite hospital level of care."  See Ex. 1, at 2.  In her complaint, Ms. Landers continues to make this argument, alleging that the care she "received after being formally admitted as an inpatient was essentially the same as the care that she had received while in the emergency room."  Compl. ¶ 29; see also id. at ¶ 42 (alleging, with respect to Mr. Dixon, that "[t]he care that [he] received after being formally admitted as an inpatient was essentially the same as the care that he had received while in the emergency room and on observation status").

This argument — that time in the emergency should count towards the 3-day-inpatient requirement where a patient has "a continuous course of diagnosis and treatment at the requisite hospital level of care" (see Ex. 1, at 2) — raises no question of fact or law common to the

-20-

proposed class.  It raises no common question of fact because determining whether a class member has the requisite "continuous course" of diagnosis and treatment is inherently *fact-specific*, and would depend on the unique facts related to each class member's hospital diagnosis, treatment, and level of care.  There thus is no "common nucleus of operative facts" sufficient to satisfy the commonality requirement.  Petrolito, 221 F.R.D. at 309.[11]

It also raises no common question of law.  Plaintiffs' entire basis for certification is their claim that the Secretary has an allegedly unlawful, across-the-board policy of denying SNF coverage "when a portion of the three-day hospital stay is attributable to time in the emergency room or on observation status."  Pl. Br. at 16.  But Ms. Landers lacks standing to argue that the agency applied such an unlawful policy or standard in analyzing her claim.  See Reese, 202 F.R.D. at 93 (plaintiff lacks standing to challenge alleged unlawful action to which she was not subjected).  The ALJ *considered* Ms. Landers' claim under the "Jenkel rational[e]," Compl., Ex. A, at 5, the standard for which she advocated.  See id.  Although the Secretary disagrees that Jenkel applies the proper standard for evaluating whether a claimant satisfies the 3-day-inpatient requirement (and will argue as such in moving for judgment on Ms. Landers' claim), the only "'unlawful conduct'" (Pl. Br. at 14) Ms. Landers personally can assert is that the ALJ misapplied the legal standard she sought (and still seeks) to the particular facts of her case.  See, e.g., Ex. 2 at 2 (arguing that "The ALJ Erred By Not Correctly Applying [Jenkel]").  *That* "as-applied" claim has no question of law in common with any conceivable claim of the potential class members.

---

[11]We note, as well, that, with respect to the question whether time in the emergency should count towards the qualifying hospital stay where a patient has "a continuous course" of diagnosis and treatment at the requisite hospital level of care, plaintiffs have not established that there is a class so numerous that joinder of all members would be impracticable.

See Reese, 202 F.R.D. at 93 (plaintiff cannot act as class representative with respect to claim challenging allegedly unlawful conduct to which she was not subjected).  The entire basis upon which plaintiffs seek certification thus has no merit.

     *Second*, plaintiffs have not demonstrated that "'each class member [will] make[] similar legal arguments to prove the defendant's liability.'"  Marisol A., 126 F.3d at 372 (internal citation omitted).  Both plaintiffs' claims for SNF coverage depend on their argument that time in the emergency room should count toward the qualifying hospital stay.  Yet plaintiffs seek to represent a class of  persons whose claims were denied because they "were . . . in the emergency room *and/or* in observation status for some portion of [their] days in the hospital."  Compl. ¶ 8; Pl. Br. at 1 (emphasis added).  Although plaintiffs lump "emergency room" and "observation" status together, these statuses are different, and it is quite conceivable that a person denied SNF coverage because of time spent in one status might advance a different (and perhaps conflicting) argument from a person denied SNF coverage because of time spent in the other.

     For example, observation services, contrary to emergency room services, ordinarily include a hospital bed.  See MBPM, ch. 4, § 290.1 ("[o]bservation services are those services furnished by a hospital on the hospital's premises, including use of a bed and at least periodic monitoring by a hospital's nursing or other staff, which are reasonable and necessary to evaluate an outpatient's condition or determine the need for a possible admission to the hospital as an inpatient").  A person denied SNF coverage *solely* because of time spent on observation status might argue that overnight use of a hospital bed should be the determinative factor in deciding when a patient should be deemed admitted.  That argument would cut against the position of a person (like Ms. Landers) who was denied SNF coverage solely because of time spent in the

emergency room.

The position of the Secretary is that the Act does not require counting of emergency room time or observation time for purposes of the 3-day-inpatient requirement. But plaintiffs are the ones seeking to certify a class, and they have not addressed the differences between "emergency room" status and "observation" status; nor have they demonstrated that "'*each* class member [will] make[] similar legal arguments to prove the defendant's liability.'" Marisol A., 126 F.3d at 372 (emphasis added) (internal citation omitted).

*Third*, Ms. Landers' claims are not typical of the claims of persons who have not exhausted administrative remedies. As noted supra Part I.B, a person, like Mr. Dixon, who still is exhausting, not only lacks a claim over which this Court has jurisdiction, but also might prevail before the ALJ under the "Jenkel rational[e]." See Compl., Ex. A, at 5. Moreover, such a person could lose in front of the ALJ on a different ground, or even on multiple grounds (e.g., for lack of a qualifying hospital stay *and* because the SNF services were not at the requisite level of care). In either scenario, the potential class member would not fall within the class definition, which includes only those persons "*denied* Medicare coverage for [SNF] care *because of* spending less than three days as a formally admitted inpatient." Compl. ¶ 8; Pl. Br. at 1 (emphasis added). For all of these reasons, plaintiffs have not established the commonality and typicality requirements.

## C.    The Named Plaintiffs Are Not Adequate Class Representatives

Plaintiffs are not adequate representatives for many of the same reasons we already have addressed. See Falcon, 457 U.S. at 157-58 n.13 (noting that the adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality requirements, although the

-23-

adequacy requirement "also raises concerns about the competency of class counsel and conflicts of interest").

For example, to satisfy adequacy of representation, "[a] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (internal citation omitted); Petrolito, 221 F.R.D. at 307 (representative plaintiff must be a member of the class she seeks to represent).  Neither plaintiff satisfies this test.  Ms. Landers is not "a part of the class" she seeks to represent because she cannot argue that the agency applied an unlawful policy or standard (as opposed to having allegedly incorrectly considered the facts) in analyzing her claim; for similar reasons, she has not been "injured" by the allegedly unlawful policy she seeks to challenge. See supra Part II.B.  As for Mr. Dixon, he is still exhausting administrative remedies.  At this point, it is not clear what claim, if any, he may have at the end of the administrative process, or whether any claim he may have will align with the class claims he seeks to litigate.  See supra Part I.B.

Plaintiffs also are not adequate class representatives because of potential "conflicts" with other class members.  Falcon, 457 U.S. at 157-58 n.13.  As explained above, the interests of persons denied SNF coverage solely because of time spent in observation may be opposed to the interests of persons, like plaintiffs, whose coverage denial also depends on time spent in the emergency room.  By advancing their own interests, therefore, the named plaintiffs might not protect the interests of a certain segment of the class.  See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992) ("class members must not have interests that are 'antagonistic' to one another") (internal citation omitted).

**D.    The Named Plaintiffs Have Not Met The Requirements of Rule 23(b)(2)**

For all of the reasons discussed above, plaintiffs also have not established the separate requirement under Rule 23(b)(2) that defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  The named plaintiffs do not have standing to argue an "across-the-board" challenge to any standard or policy of the Secretary.  See, e.g., supra Part II.B.  By definition, therefore, they cannot establish that the Secretary refused to act on grounds generally applicable to the class.

*                    *                    *

At bottom, this simply is not a case where "'the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" Caridad, 191 F.3d at 291 (quoting Falcon, 457 U.S. at 157 n. 13). The named plaintiffs cannot even raise the claims they seek to litigate on behalf of the class.  For all of these reasons, plaintiffs' motion should be denied.

**III.   THERE IS NO BASIS ON WHICH TO CERTIFY A NATIONWIDE CLASS**

Even if plaintiffs could satisfy the Rule 23 requirements, the Court should deny plaintiffs' request to certify a nationwide class based on the claims of two named plaintiffs, both of whom are Connecticut residents.  See Compl. ¶ 5 (alleging that Ms. Landers resides in Hartford, Connecticut), ¶ 6 (alleging that Mr. Dixon resides in Fairfield, Connecticut).

Nationwide class actions, by definition, centralize resolution of an issue within a single district court and exclude other fora within other Circuits from passing on the same question.

Certification of a nationwide class thus runs counter to the systemic interest in ensuring that important issues of federal law are considered by different judges.  The Supreme Court expressly has recognized the federal government's ability to litigate the same legal issue in different judicial districts without being bound by principles of nonmutual collateral estoppel, and has noted that it derives a significant benefit from permitting several courts of appeals to pass upon important issues of federal law before they are subject to Supreme Court review by writ of certiorari.  United States v. Mendoza, 464 U.S. 154, 160 (1984).

Thus, although nationwide class actions may be permissible in certain circumstances, see Califano v. Yamasaki, 442 U.S. 682, 702 (1979), the Supreme Court has stressed that district courts should pay particular regard to the powers of other fora when deciding whether to certify a case as a nationwide class:

> [N]ationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on this Court's docket.  It often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts in different factual contexts.  For this reason, a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it[.]

Id. at 702; see also Geraghty v. United States Parole Comm'n, 719 F.2d 1199, 1205 (3d Cir. 1983) (district court did not abuse its discretion in refusing to certify a nationwide class action based "on the policy of preserving inter-circuit comity"), cert. denied, 465 U.S. 1103 (1984).

Cases in this Circuit have scrutinized carefully requests for nationwide certification.  In Mercer v. Birchman, 700 F.2d 828 (2d Cir. 1983), although the issue was mooted by the court's disposition on other grounds, Judge Friendly went out of his way to express "concern" over a nationwide class certification in part because the district court "had nothing save two isolated

-26-

instances in Connecticut before it." <u>Id.</u> at 835.  He stated:  "[w]e would urge district courts to be

circumspect before issuing class action certifications like the one in this case *even when there is*

*no opposition*." <u>Id.</u> (emphasis added).  And in <u>Phelps v. Harris</u>, 86 F.R.D. 506, 512-13 (D. Conn.

1980), Judge Cabranes, citing the above language from <u>Califano</u>, certified a statewide, rather

than a nationwide, class in a Medicare case, noting that "it is best" that claims in other states, if

any, "be adjudicated separately, outside this district." <u>Id.</u> at 513.

Here, as in <u>Mercer</u>, plaintiffs seek certification of a nationwide class based on "two

isolated instances in Connecticut." <u>See</u> 700 F.2d at 835.  Indeed, one plaintiff's claims (Mr.

Dixon's) are not even properly before the Court because he still is exhausting administrative

remedies.  <u>See</u> <u>supra</u> Part I.B.  Plaintiffs are thus left with Ms. Landers, whose single, fact-based

claim plainly does not provide an appropriate vehicle for nationwide certification and the

potential "foreclosing" of "adjudication by a number of different courts and judges," <u>Califano</u>,

442 U.S. at 702, as well as the Secretary's ability to litigate similar issues in other circuits.[12]

---

[12]In the event the Court determines to certify a class, <u>but</u> <u>see</u> <u>supra</u> Part I & II, the class
should thus be limited to similarly situated persons in Connecticut, or, at most, to such persons in
the states comprising the Second Circuit.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for class certification and for

appointment of class counsel should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

SHEILA M. LIEBER
Deputy Branch Director

/s/ Craig M. Blackwell
CRAIG M. BLACKWELL,
D. Conn. Federal Bar No. phv0032
Senior Trial Counsel
Federal Programs Branch
U.S. Department of Justice
Ben Franklin Station
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 616-0679
Fax: (202) 616-8470
email: craig.blackwell@usdoj.gov

OF COUNSEL:
ALEX M. AZAR II
General Counsel
ROBERT P. JAYE
Acting Associate General Counsel
ALAN S. DORN
Acting Deputy Associate General
   Counsel for Litigation
PAUL E. SOEFFING
Attorney
U.S. Dept. of  Health and Human Services

Date: February 4, 2005

-28-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2005, a copy of the foregoing "Defendant's Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel" was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System

/s/ Craig M. Blackwell
Craig M. Blackwell
D. Conn. Federal Bar No. phv0032
Senior Trial Counsel
U.S. Department of Justice
Ben Franklin Station
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 616-0679
Fax: (202) 616-8470
email: craig.blackwell@usdoj.gov