UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARION LANDERS, MARION DIXON, and MURIEL GRIGLEY, on behalf of themselves and all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 3:04-cv-1988 (JCH) |
| v. | : : | |
| MICHAEL O. LEAVITT, Secretary of the Department of Health and Human Services, | : : : | SEPTEMBER 20, 2005 |
| Defendant. | : : | |

**RULING ON PLAINTIFFS' MOTIONS FOR
CLASS CERTIFICATION [Doc. NOS. 8, 10 and 21]**

The named plaintiffs are Medicare beneficiaries who were denied coverage for stays in a skilled nursing facility.  Medicare, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., provides for coverage for such stays.  However, the Medicare statute provides for coverage only where services are "furnished an individual after transfer from a hospital in which he was an inpatient for not less than 3 consecutive days before his discharge from the hospital in connection with such transfer."  42 U.S.C. § 1395x(i).  The named plaintiffs were denied coverage on the basis that they had not spent three or more days in a hospital prior to discharge to the nursing facility.

The plaintiffs challenge "the Secretary's misinterpretation of the three-day qualifying stay requirement."  First Am. Compl. [Doc. No. 17] ¶ 1.  The plaintiffs claim that the defendant failed to include time spent in the emergency room, or on observation status, in his calculation of the time spent in a hospital, contrary to applicable statutes, regulations, and the Equal Protection clause of the United States

1

Constitution.  The named plaintiffs seek to represent a class defined as the following:

> All Medicare beneficiaries who (1) have been or will be in a hospital for at
> least three consecutive days prior to discharge from the hospital; (2) were
> or will be in the emergency room and/or in observation status for some
> portion of those days in the hospital; (3) were or will be admitted formally
> as an inpatient for at least one of those days; (4) after a claim has been or
> will be filed on their behalf, have been or will be denied Medicare
> coverage for skilled nursing facility care because of spending less than
> three days as a formally admitted patient; and (5) have or will have a
> claim pending for the Medicare coverage so denied at some level of the
> administrative process, or have filed or could timely file for review at either
> the next level of the administrative process or in federal district court,
> within sixty (60) days prior to the date of the filing of this complaint.

Mem. Points and Authorities Supp. Mot. Class Certification and Appointment of Class

Counsel [Doc. No. 9] at 7-8.

The defendant (the "Secretary") opposes the Motion for Class Certification.  The

Secretary argues that the court lacks jurisdiction over any persons who have not

exhausted administrative remedies provided for by the Medicare statute.  With respect

to beneficiaries who have exhausted such remedies, the Secretary contends that class

certification is inappropriate.  First, it argues that the claims lack sufficient commonality

of issues of law or fact to satisfy the requirements for certification of a class action.

Second, it argues that the interests of the named plaintiffs are not sufficiently

representative of those of the proposed class.

I.       BACKGROUND

A.       Medicare Coverage for Skilled Nursing Facility Care

Medicare, a federal program, provides both disabled persons and persons 65

and older with federal health insurance.  Medicare Part A provides coverage for in-

patient hospital stays and post-hospital services.  42 U.S.C. § 1395d(a),(b).[1]  Services covered by Part A include "inpatient hospital services" and "post-hospital extended care services."  Id. at §1395d(a)(1), (2).  "Extended care services" are defined by statute as services "furnished to an inpatient of a skilled nursing facility."  Id. at §1395x(h).  In order to be eligible for coverage, such services must be "post-hospital," defined by statute as "extended care services furnished an individual after transfer from a hospital in which he was an inpatient for not less than 3 consecutive days before his discharge from the hospital in connection with such transfer."  Id. at § 1395x(I).  Agency regulations further define requirements for coverage of a patient's care at a skilled nursing facility.  According to regulations, in order for services to be covered, "The beneficiary must (1) [h]ave been hospitalized in a participating or qualified hospital or [critical access hospital], for medically necessary inpatient hospital or inpatient [critical access hospital] care, for at least 3 consecutive calendar days, not counting the date of discharge; and (2) [h]ave been discharged from the hospital or [critical access hospital] in or after the month he or she attained age 65, or in a month for which he or she was entitled to hospital or [critical access hospital] insurance benefits . . . "  Id. at § 409.30(a)(1), (2).  Further, "the beneficiary must be in need of posthospital [skilled nursing facility] care, be admitted to the facility, and receive the needed care within 30 calendar days after the date of discharge from a hospital or [critical access hospital]."  Id. at § 409.30(b)(1).

---

[1]Medicare Part B offers beneficiaries voluntary supplemental coverage for outpatient services.  42 U.S.C. § 1395k(a).

### B.    The Named Plaintiffs

Three named plaintiffs seek to represent the proposed class.  They claim to have been denied nursing facility coverage despite having spent at least three days in a hospital prior to discharge to the skilled nursing facility.  For purposes of this motion, the court considers the facts as true as alleged by the plaintiffs in their complaint.  First Am. Compl. [Doc. No. 17].  All three plaintiffs reside in Connecticut and have at all relevant times been eligible for both Medicare Parts A and B.

Suffering back pain and pain in her left leg and hip, Marion Landers, age 101, visited a hospital emergency room on April 20, 2001.  She remained in the emergency room until April 21, at which time the hospital formally admitted her as an inpatient. Prior to her admission as an inpatient, hospital staff administered to Landers intravenous subcutaneous morphine for severe pain and Landers underwent a computerized axial tomography (CAT) scan and magnetic resonance imaging (MRI) of her hip in the hospital.  Following her admission, she continued to receive intravenous morphone and had an orthopedic consultation.  On April 23, she was discharged and transferred to Avery Heights, a skilled nursing facility.  Landers was denied coverage for her stay at Avery Heights.  She exhausted available administrative remedies prior to filing the instant lawsuit.  She has since paid the cost of her care at Avery Heights, $11,610.

Suffering nausea, lightheadedness, and vomiting, Marion A. Dixon, age 76, visited a hospital emergency room on December 21, 2003.  In the emergency room, he received intravenous fluids and prescription medications and underwent blood work and a CAT scan.  On December 22, he was transferred to observation status.  He was

4

formally admitted as an inpatient on December 23, after having spent two days in the emergency room.  He was diagnosed with pneumonia and began taking intravenous Levaquin.  On December 24, Dixon was discharged to a skilled nursing facility, where he was treated until January 27, 2004.  Dixon submitted claims for coverage of his treatment at the nursing facility, both of which were denied.  Reconsideration of such denial was rejected.  Dixon has not yet completed the administrative review process. He has paid the cost of his stay in the nursing facility, $11,050.

Muriel Grigley, age 77, visited an emergency room on September 21, 2004, after having fallen.  In the emergency room, she received intravenous and oral pain medication.  The hospital conducted blood work and an MRI of her pelvic area.  She was diagnosed with a urinary tract infection as well as bilateral fractures of her pelvis. The next day, the hospital formally admitted her as an inpatient.  She continued to receive pain medications.  X-rays were taken.  On September 24, the hospital discharged her to a skilled nursing facility.  Grigley's claim for coverage for her stay at the nursing facility was denied.  She filed a request for reconsideration on January 27, 2005.  She is currently responsible for the cost of her care in the nursing facility, $11,973.

## II.     SUBJECT MATTER JURISDICTION AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Secretary argues that the court lacks jurisdiction over the proposed class because it includes individuals like Dixon and Grigley, who have not fully exhausted applicable administrative remedies and appeals.  The Medicare statute incorporates the judicial review provisions of the Social Security Act.  42 U.S.C. § 1395ii; see 42 U.S.C.

§ 405(h).  The Supreme Court has held that "42 U.S.C. §405(h) precludes federal-question jurisdiction in an action challenging denial of claimed benefits.  The only avenue for judicial review is 42 U.S.C. § 405(g), which requires exhaustion of administrative remedies."  Mathews v. Eldridge, 424 U.S. 319, 327 (1976).  Judicial review is, therefore, conditioned upon administrative exhaustion.  However, "this condition consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary."  Id. at 328.  "The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary."  Id.  This element has been satisfied by all three named plaintiffs here.

"The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted."  Id.  While this element has been satisfied by Landers, it has not been satisfied by Grigley or Dixon.  Furthermore, the proposed class would likely include other individuals who have not exhausted administrative remedies.  Therefore, the court must consider whether this element may be waived in the instant case.

"[W]here a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment [by requiring exhaustion] is inappropriate," the court will consider whether it will impose waiver upon the Secretary. Id. at 330.  In Matthews v. Eldridge, the Supreme Court established two factors relevant to such inquiry.  First, the Court determined that the constitutional challenge before it was "entirely collateral to [the] substantive claim of entitlement."  Id.  Second, the Court concluded that the plaintiff had "raised at least a colorable claim that . . . an erroneous termination [of benefits] would damage him in a way not recompensable through

6

retroactive payments."  Id. at 331.  Where, however, the plaintiffs "do not raise a claim

that is wholly 'collateral' to their claim for benefits under the [Medicare] Act, and where

they have no colorable claim that an erroneous denial of [ ] benefits in the early stages

of the administrative process will injure them in a way that cannot be remedied by the

later payment of benefits," the court will not impose waiver of the exhaustion

requirement on the Secretary.  Heckler v. Ringer, 466 U.S. 602, 618 (1984).  Whereas

the claim in Mathews was "a procedural challenge to the Secretary's denial of a

pretermination hearing, a claim that was wholly 'collateral' to [a] claim for benefits," id.,

such is not the case here.  The relief requested does not relate to the procedures by

which the agency determines whether to grant benefits, but rather a substantive policy

issue related to provision of relief.

      However, Eldridge is not the last word on waiver of the exhaustion requirement.

"The ultimate decision of whether to waive exhaustion should not be made solely by

mechanical application of the Eldridge factors, but should also be guided by the policies

underlying the exhaustion requirement." Bowen v. City of New York, 476 U.S. 467, 484

(1986).  Where "[t]he purposes of exhaustion would not be served by requiring

[plaintiffs] to exhaust administrative remedies," the court may choose to waive

exhaustion.  Id.  For example, where plaintiffs challenge "internal policy" rather than the

application of unchallenged regulations to a particular set of facts, waiver may be, but is

not necessarily, appropriate.  Id. at 487; see also Abbey v. Sullivan, 978 F.2d 37, 45 (2d

Cir. 1992) ("The policies favoring exhaustion are most strongly implicated by actions . . .

challenging the application of concededly valid regulations." (emphasis in the original)).

In addition, "[f]utility is of course one criterion militating against requiring exhaustion."

7

Abbey, 978 F.2d at 45.  "[T]he policy of permitting an agency to correct its own errors is chimerical when the challenge is to regulations promulgated and consistently enforced by the agency, and which the agency has either no power, or no inclination, to correct." Id.

In the instant case, the agency's policy regarding the three-day hospital stay requirement is collateral to the plaintiffs' claims.  To prevail on the claim raised here is not to prove eligibility for benefits.  The plaintiffs argue that the requested declaratory relief will not necessarily result in the payment of benefits.  There are additional regulations, for example, with which plaintiffs must comply in order to demonstrate eligibility for reimbursement for a stay in a skilled nursing facility.  See, e.g., 42 C.F.R. 409.31.  Because "[t]he basis for the claim was one of procedure since the class members neither sought nor were awarded benefits in the district court, but rather, challenged the Secretary's failure to follow the applicable statutory mandate," the court concludes that the claim was procedural.  State of New York v. Sullivan, 906 F.2d 910, 918 (2d Cir. 1990).  Furthermore, plaintiffs make "a colorable claim of irreparable harm" where "[d]enial of benefits potentially subjected claimants to deteriorating health, and possibly even death."  Id.  "[I]f requiring costly and time-consuming exhaustion of the administrative process would be demonstrably sterile, then the exhaustion process may be waived."  Abbey, 978 F.2d at 46; see also Conn. Dep't of Soc. Serv. v. Thompson, 242 F.Supp.2d 127, 139 (D.Conn. 2002).  Such is the case here.  Exhaustion would be futile in the face of an agency policy irreversible by any individual Administrative Law Judge.  Therefore, the court imposes waiver of the non-jurisdictional component of the exhaustion requirement.

8

III.     **CLASS CERTIFICATION**

Since filing of the Amended Complaint and the Motions to Certify the Class, two of the plaintiffs, Marion Dixon and Muriel Grigley, have obtained favorable decisions from administrative law judges with respect to their claims for coverage for their nursing home stays.  Notice Re Admin. Law Decision [Doc. No. 41, Ex. 1]; Notice Re Admin. Law Decision [Doc. No. 45, Ex. 1].  This court's jurisdiction is limited to "cases and controversies."  U.S. Const. art. III § 2.  "When the issues presented in a case are no longer 'live' or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction."  Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004) (class action not rendered moot where, prior to filing of motion to certify class, defendant made offer of judgment to individual plaintiff).  However, "it appears to be settled that once a class has been certified, mooting a class representative's claim does not moot the entire action because the class 'acquire[s] a legal status separate from the interest asserted by [the named plaintiff]."  Id. at 342 (quoting Sosna v. Iowa, 419 U.S. 393, 399 (1975)).  "Some appellate courts have . . . declined to dismiss on mootness grounds while class certification was pending."  Id. at 346 (citing Susman v. Lincoln Am. Corp., 587 F.2d 866, 869-71 (7th Cir. 1978) and Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1051 (5th Cir. July 1981)).  In the context of class actions, "[t]he mootness exception recognizes that, in certain circumstances, to give effect to the purposes of Rule 23, it is necessary to conceive of the named plaintiff as part of an indivisible class and not merely a single adverse party even before the class certification question has been decided."  Id. at 347.  As was the case in Weiss, while the "claims here are not

9

'inherently transitory' . . . they are 'acutely susceptible to mootness.'" <u>Id</u>. (quoting

<u>Comer v. Cisneros</u> 37 F.3d 775, 797 (2d Cir. 1994)).  If the defendant could moot the

entire class action by granting relief solely to plaintiff class representatives, the

remaining class members might never be able to have their claims reviewed by the

courts.  <u>Id</u>.  The court agrees with the <u>Weiss</u> court's analysis and concludes that

payment of Dixon's and Grigley's claims, after their Motion for Class Certification was

filed, does not moot their claim for purposes of this class action.

 The court next turns to the question of class certification.  The Secretary argues

that the claims lack sufficient commonality of issues of law or fact to satisfy the

requirements for certification of a class action and that the interests of the named

plaintiffs are not sufficiently representative of those of the proposed class.  The court

finds both arguments to be unavailing.

 Rule 23 provides that class certification is appropriate where "(1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law or

fact common to the class, (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class, and (4) the representative parties will

fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The

defendants do not contest the numerosity prong of these prerequisites.  They contest

the remaining prerequisites.

 First, the defendants claim that some class members will have spent time on

observation status while others will have spent time in the emergency room and that

this factual difference renders the named plaintiffs' claims atypical and the relevant

questions of fact too disparate for resolution in the course of a class action.  The

defendants' first argument, regarding commonality and typicality, cannot succeed given the plaintiffs' litigation posture.  Commonality and typicality "'tend to merge' because '[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'"  Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999) (quoting General Telephone Co. v. Falcon, 457 U.S. 147, 157 n. 13 (1982)).  The plaintiffs contest the Secretary's policy of counting time spent in a hospital, either on observation status or in an emergency room, as "outpatient services" for the purposes of calculating whether a patient has had a three-day hospital stay and, therefore, is eligible for treatment in a skilled nursing facility.  It is hardly surprising that class members' experiences in the hospital will vary. Nevertheless, typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  Caridad, 191 F.3d at 293 (internal quotation marks omitted).  The arguments that emergency room stays and time spent on observation status ought to count towards the three day qualifying hospital stay are not mutually exclusive and rest on the same facts and law. That the class will include plaintiffs who have spent time in the emergency room, observation status, or both does not prevent certification of the class.  All three categories of plaintiffs are equally harmed by the Secretary's interpretation of the three day qualifying hospital stay requirement.

11

Second, the defendant claims that the proposed class will not adequately represent all class members' interests because Connecticut Medicare recipients may wish to assert that their claim for nursing home coverage ought to be granted based on the decision in <u>Jenkel v. Shalala</u>, 845 F.Supp. 69 (D.Conn. 1994).  The <u>Jenkel</u> court held that a patient who received "continuous care" beginning in an emergency room and concluding as a formal inpatient could count the time spent in the emergency room toward the three-day minimum.  The defendant claims that the Connecticut Medicare recipients who are class members will lose their opportunity to assert their claim under <u>Jenkel</u> due to their participation in this class action.  Contrary to the defendant's assertion, should the class action fail on the merits, Connecticut Medicare recipients who wish to argue that they are nevertheless eligible for benefits because they received a continuous course of care or treatment will not lose their ability to do so.  <u>See</u> <u>McDonald v. Sec'y of Health and Human Serv.</u>, 834 F.2d 1085 (1st Cir. 1985).  In <u>McDonald</u>, the class representative challenged a regulation as interpreted by the Secretary of Health and Human Services.  The regulation was upheld by the First Circuit and, on remand, the district court issued orders that allowed class members to revive administrative claims that had laid dormant during the pendency of judicial review, even though administrative deadlines had expired.  <u>Id</u>. at 1086.  The district court's orders were upheld on appeal.

Individual class members do not lose their right to have their claims examined on a case-by-case basis as a result of this class action.  The plaintiffs seek declaratory relief regarding an agency policy; they do not seek a monetary award.  Whether or not the class meets with success on the merits of its claims, the individual class members'

claims will have to be considered by the agency on a case-by-case basis.

Based on the foregoing, the court finds that the proposed class can be certified.[2]

## IV.   APPOINTMENT OF CLASS COUNSEL

In light of their experience and expertise in this area of the law, considering the requirements of Rule 23(g), and in the absence of any objection from the defendant, the court appoints the plaintiffs' attorneys as class counsel.

## V.   CONCLUSION

For the foregoing reasons, the plaintiffs' motions for class certification [Doc. Nos. 8, 10 and 21] are GRANTED.

The Court having fully considered the arguments of the parties, and it appearing that joinder of the class members would be impracticable, that there are common questions of law and fact, that the claims of the named plaintiffs are typical of the claims of the class members, that the class members will fairly and adequately protect the interests of the class members, and that the defendant has acted on grounds generally applicable to the class as whole,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the class is certified pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with named plaintiffs Marion Landers, Marion A. Dixon, and Muriel Grigley as the class representatives and the class defined as follows:

All Medicare beneficiaries who (1) have been or will be in a hospital for at least three consecutive days prior to discharge from the hospital; (2) were or will be in

---

[2]The court leaves open the question of whether division into subclasses may be appropriate.  Should one or both parties believe that division into subclasses is appropriate, it may raise the issue by motion.

the emergency room and/or in observation status for some portion of those days in the hospital; (3) were or will be admitted formally as an inpatient for at least one of those days; (4) after a claim has been or will be filed on their behalf, have been or will be denied Medicare coverage for skilled nursing facility care because of spending less than three days as a formally admitted inpatient; and (5) have or will have a claim pending for the Medicare coverage so denied at some level of the administrative process, or have filed or could timely file for review at either the next level of the administrative process or in federal district court, within sixty (60) days prior to the date of the filing of this complaint.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as plaintiffs' counsel Gill Deford, Judith A. Stein, Brad S. Plebani, Sally Hart, and Lara Stauning satisfy the requirements of Rule 23(g)(1)(B) and (C), they are appointed class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

**SO ORDERED.**

      Dated at Bridgeport, Connecticut this 20th day of September, 2005.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge